FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

2022 OCT -3 AM 11:59

OFFICE OF THE CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

ROBERT A. HOOD, a/k/a "Jason Long",

    Defendant.

8:21CR90

PLEA AGREEMENT

IT IS HEREBY AGREED between the plaintiff, United States of America, through its counsel, Steven A. Russell, Acting United States Attorney and Christopher L. Ferretti, Assistant United States Attorney, and defendant, Robert A. Hood, and James R. Kozel, counsel for defendant, as follows:

I

## THE PLEA

A.   CHARGE(S) & FORFEITURE ALLEGATION(S).

Defendant agrees to plead guilty to Counts 1 and 2 of the Superseding Indictment. Count 1 charges a violation of Title 21, United States Code, Section 841(a)(1)&(b)(1), and Title 21, United States Code, Section 846. Count 2 charges a violation of Title 18, United States Code, Section 1956(h).

B.   In exchange for the defendant's plea of guilty as indicated above, the United States agrees as follows:

1. The United States agrees to dismiss the Indictment and the Forfeiture Allegation as set forth in the Superseding Indictment (as to this defendant only) at the time of sentencing.

2. The United States agrees that the defendant will not be federally prosecuted in the District of Nebraska for any drug trafficking and money laundering crimes as disclosed by the discovery material delivered to the defendant's attorney, as of the date this agreement is signed by all parties, other than as set forth in paragraph A, above. This agreement not to prosecute the defendant for specific crimes, does not prevent any prosecuting authority from prosecuting the defendant for any other crime, or for any crime involving physical injury or death.

1

## II
## NATURE OF THE OFFENSE

A. ELEMENTS EXPLAINED.

Defendant understands that the offense to which defendant is pleading guilty has the following elements:

1. COUNT 1:
   a. Two or more persons reached an agreement or came to an understanding to distribute and possess with intent to distribute controlled substances to include anabolic steroids, 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, N-Ethylhexedrone, and Alprazolam; and
   b. Defendant voluntarily and intentionally joined in the agreement or understanding, either at the time it was first reached or at some later time while it was still in effect; and
   c. At the time the defendant joined in the agreement or understanding, knew the purpose of the agreement or understanding.

2. COUNT 2:
   a. Between an unknown date, as early as in or about April 12, 2018 and continuing to in or about March, 2021, defendant knowingly and intentionally conspired and agreed with others to commit offenses under 18 U.S.C. § 1956(a)(1)(B)(i) and § 2.
   b. As part of that agreement, defendant knowingly conducted or attempted to conduct a financial transaction which in any way or degree affected interstate or foreign commerce;
   c. The defendant conducted or attempted to conduct a financial transaction that involved the proceeds of drug trafficking (the specified unlawful activity);
   d. At the time the defendant conducted or attempted to conduct the financial transaction, the defendant knew the funds involved in such financial transaction represented the proceeds of some form of unlawful activity (drug trafficking);
   e. The defendant conducted or attempted to conduct the financial transaction knowing that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership or control of the proceeds of drug

2

trafficking.

B. ELEMENTS UNDERSTOOD AND ADMITTED - FACTUAL BASIS.

Defendant has fully discussed the facts of this case with defense counsel. Defendant has committed each of the elements of the crime, and admits that there is a factual basis for this guilty plea. The following facts are true and undisputed.

1. Defendant was part of a drug trafficking organization (DTO) involved in the production and distribution of anabolic steroids and other controlled substances to customers throughout the country.

2. Certain members of the DTO established and used a private Facebook group known as "Bob's Custom Clothing Warehouse", which functioned as an online storefront for anabolic steroids and other controlled substances. Certain members of the organization and customers used coded terminology when referring to controlled substances, e.g. "shirts", "primo suits", and "secret recipes".

3. In addition to anabolic steroids, the DTO marketed and sold pharmaceutical drugs described as Xanax and Adderall. Legitimately prescribed pharmaceutical Adderall is a Schedule II controlled substance containing amphetamine salts. However, laboratory testing revealed that the "Adderall" distributed by the DTO was counterfeit and contained close to 400 grams of methamphetamine (mixture), also a Schedule II controlled substance. The "Xanax" distributed by the DTO contained N-Ethylhexadrone, a Scheduled I controlled substance. "Xanax" is a brand name for Alprazolam, a Schedule IV controlled substance. Alprazolam was also confirmed by laboratory testing to be present in substances recovered by investigators.

4. Certain members of the DTO operated clandestine laboratories to convert raw materials such as steroid powders into finished anabolic steroids. At least one member of the conspiracy imported anabolic steroids and other controlled substances from China. Defendant's role was that of a "sales rep" for the organization who would handle contact with customers and accept payment for orders.

5. Sales of controlled substances were paid for using cryptocurrency and cash. Cash payments were often made electronically using digital payments platforms (e.g. PayPal). Members of the DTO used peer-to-peer digital payments platforms to accept payments

for controlled substances from customers and to transfer funds among and between themselves.

6. In addition to the use of digital payments platforms, the DTO used various other methods designed to protect the membership's anonymity and to provide security for the criminal organization from law enforcement and other criminal organizations. The DTO's use of certain methods further concealed and disguised the nature, source, ownership, and control of the proceeds of controlled substance transactions. These methods included:
   a. The use of cryptocurrencies (e.g. Bitcoin);
   b. The use of virtual currency exchanges (e.g. Coinbase);
   c. Private messaging including the use of encrypted messaging applications (e.g. Wickr).
   d. Use of aliases and false names for messaging application accounts, financial accounts, and digital payments platforms;
   e. Use of "shell companies", i.e. legal incorporated businesses, to disguise illicit proceeds with legitimate funds.

7. The DTO used the United States Postal Service as a means of distributing the anabolic steroids and controlled substances. Certain members received illicit shipments from producers, and thereafter repackaged and redistributed them through the United States Postal Service to end customers as a means to further obfuscate the sources of the anabolic steroids and controlled substances.

## III
## PENALTIES

A. COUNT 1.
   1. A maximum term of 40 years in prison; and a mandatory minimum 5 years;
   2. A maximum $5,000,000 fine;
   3. A mandatory special assessment of $100 per count; and
   4. A term of supervised release of not less than 4 years. Defendant understands that failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring defendant to serve in prison all or part of the term of supervised release.
   5. Possible ineligibility for certain Federal benefits.

4

B. COUNT 2.
1. A maximum 20 years in prison; and a mandatory minimum of 0 years;
2. A maximum $500,000 fine or twice the value of the money involved, whichever is greater;
3. A mandatory special assessment of $100 per count; and
4. A term of supervised release of no more than 3 years. Defendant understands that failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring defendant to serve in prison all or part of the term of supervised release.
5. Possible ineligibility for certain Federal benefits.

IV
## AGREEMENT LIMITED TO U.S. ATTORNEY'S OFFICE DISTRICT OF NEBRASKA

This plea agreement is limited to the United States Attorney's Office for the District of Nebraska, and cannot bind any other federal, state or local prosecuting, administrative, or regulatory authorities.

V
## SENTENCING ISSUES

A. SENTENCING AGREEMENTS.

Although the parties understand that the Guidelines are advisory and only one of the factors the court will consider under 18 U.S.C. § 3553(a) in imposing a sentence, the parties will jointly recommend the following Base Offense Level, Specific Offense Characteristics, Adjustments and Departures (if applicable). Unless otherwise stated, all agreements as to sentencing issues are made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B).

1. The parties agree that the defendant should be held responsible, beyond a reasonable doubt, for at least 700 kilograms, but not more than 1,000 kilograms of converted drug weight.
2. If the defendant is found to be entitled to an offense level reduction under U.S.S.G. 3E1.1(a) for acceptance of responsibility, the United States hereby moves that the court reduce the defendant's offense level by one additional level, pursuant to

5

U.S.S.G. § 3E1.1(b), if that paragraph otherwise applies.

3. If defendant truthfully discloses to the United States all information and evidence the defendant has concerning the offense and relevant conduct, and if defendant otherwise qualifies for "safety valve" pursuant to 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2, the United States will recommend a two-level reduction pursuant to § 2D1.1(b)(18), and relief from any statutory mandatory minimum sentence pursuant to § 3553(f) and § 5C1.2. Defendant understands that if he does not qualify for § 3553(f) and § 5C1.2, defendant may be subject to a statutory mandatory minimum sentence.

B. ACCEPTANCE OF RESPONSIBILITY.

Notwithstanding paragraph A above, the United States will not recommend any adjustment for Acceptance of Responsibility if defendant:

1. Fails to admit a complete factual basis for the guilty plea at the time it is entered, or
2. Denies involvement in the offense, gives conflicting statements about that involvement, or is untruthful with the court or probation officer, or
3. Fails to appear in court, or
4. Engages in additional criminal conduct, or
5. Attempts to withdraw the guilty plea, or
6. Refuses to abide by any lawful court order, or
7. Contests or assists any third party in contesting the forfeiture of property(ies) seized or forfeited in connection with this case.

The parties further agree the defendant will make no "blanket" objections to the criminal history calculation (specific objections based on stated grounds are permitted). Objections to criminal history on the basis that the defendant was not the person who was convicted of the offense(s) described in the presentence investigation report or on the basis that the defendant was not represented by counsel in connection with such conviction(s), if determined to be unfounded, are evidence the defendant has not accepted responsibility and the parties agree no credit for acceptance of responsibility should be given.

C. ADJUSTMENTS, DEPARTURES & REDUCTIONS UNDER 18 U.S.C. § 3553(a).

The parties agree that defendant may not request or recommend additional downward

adjustments, departures, including criminal history departures under U.S.S.G. § 4A1.3. The parties further agree that defendant may seek a variance under 18 U.S.C. § 3553(a). The United States will oppose any such downward adjustments, departures, and sentence reductions not set forth in Section V, paragraph A above, and retains discretion to oppose a request for a variance.

D.   CRIMINAL HISTORY.

The parties have no agreement concerning the defendant's Criminal History Category, except that if defendant is determined to be a Career Offender, the parties agree that the defendant is automatically a Criminal History Category VI pursuant to U.S.S.G. § 4B1.1(b).

E.   "FACTUAL BASIS" AND "RELEVANT CONDUCT" INFORMATION.

The parties agree that the facts in the "factual basis" paragraph of this agreement, if any, are true, and may be considered as "relevant conduct" under U.S.S.G. § 1B1.3 and as the nature and circumstances of the offense under 18 U.S.C. § 3553(a)(1).

The parties agree that all information known by the office of United States Pretrial Service may be used by the Probation Office in submitting its presentence report, and may be disclosed to the court for purposes of sentencing.

## VI

## DEFENDANT WAIVES APPEAL AND COLLATERAL ATTACK

The defendant hereby knowingly and expressly waives any and all rights to appeal the defendant's conviction and sentence, including any restitution order in this case, and including a waiver of all motions, defenses, and objections which the defendant could assert to the charges or to the Court's entry of Judgment against the defendant, and including review pursuant to 18 U.S.C. § 3742 of any sentence imposed, except:

    (a) As provided in Section I above, (if this is a conditional guilty plea); and

    (b) A claim of ineffective assistance of counsel.

The defendant further knowingly and expressly waives any and all rights to contest the defendant's conviction and sentence in any post-conviction proceedings, including any proceedings under 28 U.S.C. § 2255, except:

    (a) The right to timely challenge the defendant's conviction and the sentence of the Court should the Eighth Circuit Court of Appeals or the United States Supreme Court later find that the charge to which the defendant is agreeing to plead guilty fails to state a crime.

(b) The right to seek post-conviction relief based on ineffective assistance of counsel.

If defendant breaches this plea agreement, at any time, in any way, including, but not limited to, appealing or collaterally attacking the conviction or sentence, the United States may prosecute defendant for any counts, including those with mandatory minimum sentences, dismissed or not charged pursuant to this plea agreement. Additionally, the United States may use any factual admissions made by defendant pursuant to this plea agreement in any such prosecution.

## VII
## BREACH OF AGREEMENT

Should it be concluded by the United States that the defendant has committed a crime subsequent to signing the plea agreement, or otherwise violated this plea agreement, the defendant shall then be subject to prosecution for any federal, state, or local crime(s) which this agreement otherwise anticipated would be dismissed or not prosecuted. Any such prosecution(s) may be premised upon any information, statement, or testimony provided by the defendant.

In the event the defendant commits a crime or otherwise violates any term or condition of this plea agreement, the defendant shall not, because of such violation of this agreement, be allowed to withdraw the defendant's plea of guilty, and the United States will be relieved of any obligation it otherwise has under this agreement, and may withdraw any motions for dismissal of charges or for sentence relief it had already filed.

## VIII
## SCOPE OF AGREEMENT

A. This plea agreement embodies the entire agreement between the parties and supersedes any other agreement, written or oral.

B. By signing this agreement, the defendant agrees that the time between the date the defendant signs this agreement and the date of the guilty plea will be excluded under the Speedy Trial Act. The defendant stipulates that such period of delay is necessary in order for the defendant to have opportunity to enter the anticipated plea of guilty, and that the ends of justice served by such period of delay outweigh the best interest of the defendant and the public in a speedy trial.

C. The United States may use against the defendant any disclosure(s) the defendant has made pursuant to this agreement in any civil proceeding. Nothing contained in this agreement shall in any manner limit the defendant's civil liability which may otherwise be found to exist, or in any manner limit or prevent the United States from pursuing any applicable civil remedy, including, but not limited to remedies regarding asset forfeiture and/or taxation.

D. Pursuant to 18 U.S.C. § 3013, the defendant will pay to the Clerk of the District Court the mandatory special assessment of $100 for each felony count to which the defendant pleads guilty. The defendant will make this payment at or before the time of sentencing.

E. By signing this agreement, the defendant waives the right to withdraw the defendant's plea of guilty pursuant to Federal Rule of Criminal Procedure 11(d). The defendant may only withdraw the guilty plea in the event the court rejects the plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(5). Furthermore, defendant understands that if the court rejects the plea agreement, whether or not defendant withdraws the guilty plea, the United States is relieved of any obligation it had under the agreement and defendant shall be subject to prosecution for any federal, state, or local crime(s) which this agreement otherwise anticipated would be dismissed or not prosecuted.

F. This agreement may be withdrawn by the United States at any time prior to its being signed by all parties.

IX

## MODIFICATION OF AGREEMENT MUST BE IN WRITING

No promises, agreements or conditions have been entered into other than those set forth in this agreement, and none will be entered into unless in writing and signed by all parties.

X

## DEFENDANT AND COUNSEL FULLY UNDERSTAND AGREEMENT

By signing this agreement, defendant certifies that defendant read it (or that it has been read to defendant in defendant's native language). Defendant has discussed the terms of this agreement with defense counsel and fully understands its meaning and effect.

UNITED STATES OF AMERICA

Steven A. Russell<br>
~~JAN W. SHARP~~<br>
Acting United States Attorney

9/23/2022
_____
Date

_CHRISTOPHER L. FERRETTI_
ASSISTANT U.S. ATTORNEY

7/20/2022
_____
Date

_ROBERT A. HOOD_
DEFENDANT

7/20/2022
_____
Date

_JAMES R. KOZEL_
COUNSEL FOR DEFENDANT